Filed 9/26/16  Killion v. Agee CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Calaveras)

----

| | |
|---|---|
| STANLEY J. KILLION, | C076816 |
| Plaintiff and Respondent, | (Super. Ct. No. 14EA40046) |
| v. | |
| JOHN AGEE, | |
| Defendant and Appellant. | |

Defendant John Agee, proceeding in propria persona, appeals from the issuance of a restraining order against him at the request of his girlfriend's former landlord, plaintiff

1

Stanley J. Killion,[1] pursuant to the Elder Abuse and Dependent Adult Civil Protection Act (the Elder Abuse Act). (Welf. & Inst. Code, § 15600 et seq.)[2] We affirm.

BACKGROUND

On April 21, 2014, Stanley, age 76, filed a request for a restraining order against Agee pursuant to section 15657.03. In a declaration attached to the request, Stanley averred that Agee and his girlfriend, Isabelle Lacazotte, were former tenants, having leased certain real property from him in Copperopolis. Stanley and Maxine also enjoyed a social relationship with Agee and Lacazotte.

Agee and Lacazotte visited the Killions at their home in Sonora on several occasions. On one occasion, Lacazotte offered to "clean" the Killions computer. The computer contained the Killions' personal financial information. Lacazotte took the computer and apparently never returned it. On another occasion, Agee and Lacazotte borrowed a silver concho belt and sewing machine, together with other miscellaneous items. These items were never returned. Later, the Killions discovered that documents attesting to the registration and pedigree of certain livestock had been removed from a file cabinet in their home. The declaration implies – but does not expressly state – that Agee and Lacazotte used the stolen documents to facilitate the unauthorized sale of a horse and two foals that belonged to Stanley, keeping the proceeds for themselves.

The relationship between the two couples began to deteriorate in November 2013. On November 14, 2013, Stanley visited the property and "noticed that many of the horse panels, gates, feeders, lumber, sheet metal, and fencing were missing." Stanley asked Agee about the missing property, and Agee "became extremely volatile," telling Stanley

---

[1]    We refer to Stanley Killion by his first name to distinguish him from his wife, Maxine.

[2]    Undesignated statutory references are to the Welfare and Institutions Code.

2

to "get the fuck off [my] property." Agee also threatened to "blow [Stanley's] head off" and "burn the place to the ground."

This confrontation appears to have sparked a flurry of litigation between the two couples. First, Lacazotte sought and obtained an emergency protective order against Stanley.**3** She also commenced a small claims action against Stanley and Maxine. Next, Agee commenced a small claims action against Stanley and Maxine. Finally, Stanley and Maxine filed counterclaims against Agee and Lacazotte, alleging elder abuse and misappropriation of personal property.**4** These pleadings are not part of the record on appeal.

On December 1, 2013, Lacazotte gave notice of her intention to vacate the Copperopolis property within 30 days. Shortly thereafter, Stanley enlisted the help of a "property manager," Dana Hogencamp, to manage the Copperopolis property.

On December 31, 2013, Stanley visited the Copperopolis property to do a walk through and discovered that Agee and Lacazotte "completed their move by taking down a wooden building on a cement foundation, using a jack hammer to break through cement and remove hitching posts, and leaving rubbish, weeds, holes, and vacant space once occupied by outbuildings and horse panels owned by [Stanley.]" The declaration also avers that Lacazotte made false reports about Stanley to law enforcement and other county officials, and interfered with his relationships with his insurance and mortgage companies. Specifically, the declaration avers that Lacazotte contacted Stanley's mortgage lender and accused him of mortgage fraud.

The declaration alleges that Agee and Lacazotte's conduct caused Stanley and Maxine to suffer "tremendous emotional, financial and mental strain." According to

---

**3** The emergency protective order appears to have been dismissed shortly thereafter.

**4** The small claims court properly declined to exercise jurisdiction over Stanley's elder abuse claims.

3

Stanley, "We have lost countless hours of sleep; these matters have put constant strain on [our] marriage; it has caused me to get behind on my mortgage."

The request seeks orders directing Agee to stay away from Stanley and Maxine, and barring Agee from "filing any more fraudulent actions against us." The request also seeks an order barring Agee from "contact[ing] . . . county officials; mortgage company; insurance co; [and] law enforcement." The trial court set the matter for hearing, without issuing any temporary orders.

An evidentiary hearing was held on May 8, 2014, and May 22, 2014. Both couples attended the hearing. There is nothing in the record to suggest that anyone else was present.

On May 27, 2014, the trial court entered an order directing Agee to stay 150 yards away from Stanley and Maxine and prohibiting him from having any contact with them. The order also prohibits Agee from physically or financially abusing Stanley and Maxine, harassing them, destroying their personal property, or disturbing their peace. The order indicates that the case "involve[s] solely financial abuse, unaccompanied by force, threat, harassment, intimidation, or any other form of abuse."

Agee filed a timely notice of appeal. In designating the record on appeal, Agee elected to proceed without a record of the oral proceedings in the trial court. In so doing, Agee affirmed that, "I understand that without a record of the oral proceedings in the superior court, the Court of Appeal will not be able to consider what was said during those proceedings in determining whether an error was made in the superior court proceedings."

DISCUSSION

On appeal, Agee contends the trial court erred in issuing the restraining order against him because: (1) there was insufficient evidence of abuse; (2) the court failed to

4

consider evidence of Stanley's fraud;[5] (3) the court deprived Agee of an opportunity to complete his cross-examination of Stanley's property manager, Hogencamp; and (4) the court failed to state the reasons for its decision. Agee has failed to provide a record sufficient for us to consider any of these claims.

" 'A judgment or order of the lower court is *presumed correct.* All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' [Citations.]" (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564, original italics.) "It is well settled, of course, that a party challenging a judgment [or order] has the burden of showing reversible error by an adequate record. [Citations.]" (*Ballard v. Uribe* (1986) 41 Cal.3d 564, 574.) "A necessary corollary to this rule is that if the record is inadequate for meaningful review, the appellant defaults and the decision of the trial court should be affirmed." (*Mountain Lion Coalition v. Fish & Game Com.* (1989) 214 Cal.App.3d 1043, 1051, fn. 9.)

An adequate record includes a reporter's transcript prepared at the appellant's expense if the appellant "intends to raise any issue that requires consideration of the oral proceedings in the superior court . . . ." (Cal. Rules of Court, rules 8.120(b) & 8.130(b); see *Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 186 (*Foust*).) Where no reporter's transcript is available, an appellant may submit an agreed statement or a settled statement summarizing the bases on which the superior court decided the points to be raised on appeal. (*Foust, supra*, at p. 186; Cal. Rules of Court, rules 8.134 &

---

**5**     Agee also argues the trial court failed to consider Stanley's "demeanor and credibility" in view of his ostensible career as "a long time swindler." We view this contention as a variation on the argument that the trial court failed to consider the purported evidence of Stanley's fraud.

8.137.)  " 'Failure to provide an adequate record on an issue requires that the issue be resolved against [the appellant].' "  (*Foust, supra*, at p. 187, quoting *Hernandez v. California Hospital Medical Center* (2000) 78 Cal.App.4th 498, 502.)

Because Agee has failed to provide an adequate record, he has forfeited his challenge to the sufficiency of the evidence to prove elder financial abuse.  (*Estate of Fain* (1999) 75 Cal.App.4th 973, 992 ["Where no reporter's transcript has been provided and no error is apparent on the face of the existing appellate record, the judgment must be *conclusively presumed correct* as to *all evidentiary matters.*  To put it another way, it is presumed that the unreported trial testimony would demonstrate the absence of error.  [Citation.]  The effect of this rule is that an appellant who attacks a judgment but supplies no reporter's transcript will be precluded from raising an argument as to the sufficiency of the evidence," original italics].)  But even if we were to overlook the inadequacy of the record, we would nonetheless affirm.

The Elder Abuse Act was enacted to protect elders and dependent adults from abuse, neglect, and abandonment.  (§ 15600, subd. (a).)  An " 'elder' " is any person 65 years of age or older.  (§ 15610.27.)  " 'Abuse of an elder or a dependent adult' " includes "[p]hysical abuse, neglect, financial abuse, abandonment, isolation, abduction, or other treatment with resulting physical harm or pain or mental suffering."  (§ 15610.07.)  Section 15610.30 provides in pertinent part:  "(a)  'Financial abuse' of an elder . . . occurs when a person or entity does any of the following:  [¶]  (1)  Takes, secretes, appropriates, obtains, or retains real or personal property of an elder . . . for a wrongful use or with intent to defraud, or both[;]  [¶]  (2)  Assists in taking, secreting, appropriating, obtaining, or retaining real or personal property of an elder . . . for a wrongful use or with intent to defraud, or both."  (§ 15610.30.)

"We review the issuance of a protective order under the Elder Abuse Act for abuse of discretion, and we review the factual findings necessary to support the protective order for substantial evidence.  [Citation.]"  (*Gdowski v. Gdowski* (2009) 175 Cal.App.4th 128,

135 (*Gdowski*).) "We resolve all conflicts in the evidence in favor of respondent, the prevailing party, and indulge all legitimate inferences in favor of upholding the trial court's findings. [Citation.] Declarations favoring the prevailing party's contentions are deemed to establish the facts stated in the declarations, as well as all facts which may reasonably be inferred from the declarations, if there is a substantial conflict in the facts included in the competing declarations, the trial court's determination of the controverted facts will not be disturbed on appeal. [Citation.]" (*Bookout v. Nielsen* (2007) 155 Cal.App.4th 1131, 1137-1138 (*Bookout*).)

Despite the paucity of the record, substantial evidence supports the trial court's finding of elder financial abuse. As we have discussed, Stanley's declaration avers that Agee and Lacazotte appropriated numerous articles of personal property, including livestock, "horse panels, gates, feeders, lumber, sheet metal, and fencing." When confronted, Agee "became extremely volatile," threatening to "blow [Stanley's] head off" and "burn the place to the ground." Agee's conduct caused Stanley, age 76, to suffer "tremendous emotional, financial and mental strain." On this record, a rational trier of fact could conclude that Agee appropriated Stanley's personal property for a wrongful use or with intent to defraud, in violation of the Elder Abuse Act.

Agee argues the trial court failed to consider evidence of Stanley's fraud. He claims that Stanley committed mortgage fraud by claiming a homestead exemption on the Copperopolis property. He claims that Stanley reneged on an agreement that Agee would train Stanley's horses, and provide for their care, until such time as they could be sold. He claims Stanley failed to maintain the Copperopolis property in habitable condition, and sought the restraining order to retaliate against Agee and Lacazotte for reporting him to the Calaveras County Building Department. He claims that Stanley's property manager, Hogencamp, was an unreliable witness because she leased property from Stanley that she could not afford, was not qualified to act as a property manager, and has a history of drug addiction.

7

While these points may have been appropriate argument in the trial court, arguing them on appeal suggests that Agee misunderstands our standard of review. It is not our role to reweigh the evidence or make findings regarding credibility. Those functions are within the exclusive province of the trier of fact, the trial judge in this case. (*Hasson v. Ford Motor Co.* (1977) 19 Cal.3d 530, 544 [appellate court does not "reweigh the evidence but rather determine[s] whether . . . there is substantial evidence to support the judgment"], overruled on other grounds in *Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 574; *Vorse v. Sarasy* (1997) 53 Cal.App.4th 998, 1009 [trier of fact is exclusive judge of witness credibility].) We therefore reject Agee's challenge to the sufficiency of the evidence, and his related contention that the trial court failed to consider evidence of Stanley's fraud.

Agee also argues that Stanley's request for a restraining order "should have been subject to a higher burden of proof because Mr. Agee and Mrs. Lacazotte's individual interests and rights were at stake." As support for the foregoing proposition, Agee offers a partial citation to a gang injunction case, *People v. Englebrecht* (2001) 88 Cal.App.4th 1236. However, the Court of Appeal, Fourth Appellate District, Division Three rejected the exact same argument (also based on *Englebrecht*) in *Bookout, supra,* holding that "the public policy interest as articulated by the Legislature [in enacting the Elder Abuse Act] favors application of the preponderance of the evidence standard, not the clear and convincing standard." (*Bookout, supra*, 155 Cal.App.4th at p. 1139.) We therefore reject Agee's contention that Stanley's request should have been subject to a higher standard of proof. (See *Gdowski, supra*, 175 Cal.App.4th at p. 138 [petitioner bears the burden of establishing his or her case by a preponderance of the evidence].)

We also reject Agee's contention that the trial court deprived him of an opportunity to complete his cross-examination of Hogencamp. In the absence of a reporter's transcript (or a suitable substitute), we cannot verify Agee's claim that he "was allowed to ask only one question" on the first day of the evidentiary hearing. We cannot

assess the trial court's reasons for cutting Agee's cross-examination short (assuming that is what happened), and consequently have no way of knowing whether Agee was deprived of due process or a fair hearing. Thus, Agee's failure to provide an adequate record is fatal to his contention that the trial court deprived him of an opportunity to complete his cross-examination of Hogencamp.

Finally, Agee contends the trial judge failed to "state the reasons for his determination and did not indicate the evidence he relied on."[6] We understand Agee to complain that the trial court failed to issue a statement of decision. However, the trial court was not required to provide a statement of decision. (Code Civ. Proc., § 632; *People v. Landlords Professional Services, Inc.* (1986) 178 Cal.App.3d 68, 70.) Furthermore, in the absence of a reporter's transcript (or suitable substitute), we have no way of knowing whether Agee even requested a statement of decision.

In reaching our conclusion, we are mindful that Agee represents himself on appeal. We note, however, that "[a] party proceeding in propria persona 'is to be treated like any other party and is entitled to the same, but no greater[,] consideration than other litigants and attorneys.' [Citation.] Indeed, ' "the in propria persona litigant is held to the same restrictive rules of procedure as an attorney." ' " (*First American Title Co. v. Mirzaian* (2003) 108 Cal.App.4th 956, 958, fn. 1; *Leslie v. Board of Medical Quality Assurance* (1991) 234 Cal.App.3d 117, 121.) We therefore reject Agee's claims of error.

---

**6**    Agee purports to find support for his claim that the trial court was required to prepare a statement of decision in the Administrative Procedure Act, section 551 et seq. of title 5 of the United States Code. The Administrative Procedure Act is inapplicable to these proceedings.

## DISPOSITION

The order granting the restraining order is affirmed.  Cost on appeal are awarded to plaintiff.  (Cal. Rules of Court, rule 8.278(a).)


                                                            _____NICHOLSON_____, Acting P. J.


We concur:


_____MURRAY_____, J.


_____RENNER_____, J.